UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANGEL PEREZ, *on behalf of himself and other similarly situated in the proposed FLSA Collective Action*,

                        Plaintiff,

                v.

66 MEAT CORP., 50-01 MEAT CORP., 205 MEAT CORP., 509 MEAT CORP., AMEED MUJALLI, MOHAMMAD MUJALLI,

                        Defendants.
------------------------------------------------------------------X

**REPORT & RECOMMENDATION**

22-CV-7003
(Merle, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On November 16, 2022, Plaintiff Angel Perez, on behalf of himself and others similarly situated in a proposed collective action, filed a federal lawsuit against Defendants 66 Meat Corp., 50-01 Meat Corp., 205 Meat Corp., 509 Meat Corp., Ameed Mujalli, and Mohammad Mujalli (collectively, "Defendants"), alleging wage and hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"). *See generally* Dkt. No. 1.

The parties reached a settlement in principle at a February 20, 2024 settlement conference before the undersigned. *See* Minute Entry dated February 20, 2024. On April 29, 2024, Plaintiff filed a motion requesting that the Court approve the Settlement Agreement ("Settlement Agreement") as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* Dkt. No. 35.

Following an April 30, 2024 fairness hearing, and for the reasons set forth below, this Court respectfully recommends that the Settlement Agreement be approved as fair and reasonable. The

Court also respectfully recommends that Paragraph 11 of the Settlement Agreement—the confidentiality clause—be stricken from the Settlement Agreement.

## I. Relevant Factual and Procedural Background

Defendants own and operate a network of eight supermarkets, doing business as "urban Market" and "Dumbo Market." *See* Dkt. No. 35 at 1. Plaintiff alleges that he was employed by Defendants as a butcher and general worker from approximately June 2015 through September 2022. *See* Dkt. No. 1 ¶¶ 59-72.[1] Plaintiff alleges that he regularly worked in excess of forty (40) hours per week each week and was paid a flat weekly salary that "did not vary regardless of how many additional hours he worked in a week." *Id.* at ¶¶ 72-74.

On November 16, 2022, Plaintiff filed a complaint, on behalf of himself and all other similarly situated employees, alleging the following claims: (1) failure to remit unpaid minimum wages in violation of the FLSA and NYLL; (2) failure to remit overtime wages in violation of the FLSA and NYLL; (3) failure to provide wage notices in violation of the NYLL; (4) failure to provide wage statements in violation of the NYLL; (5) failure to pay timely wages in violation of the- NYLL; and (6) failure to remit spread of hours pay in violation of the NYLL. *See* Dkt. No. 1 ¶¶ 85-119. All Defendants appeared and interposed an answer to the complaint. *See* Dkt. No. 19.

The parties then proceeded to mediation but were unable to reach a settlement after two mediation sessions. *See* Mediation Referral dated May 17, 2023; Dkt. No. 21 (apprising this Court of the status of mediation). The parties proceeded with discovery while engaging in settlement discussions. *See, e.g.* Dkt. Nos. 21-27.

The Court held a settlement conference on February 20, 2024 where the parties reached an agreement in principle. *See* Minute Entry dated February 20, 2024.

---

[1] While Plaintiff began working for Defendant in June 2015, the relevant period of employment at issue in this litigation begins on November 16, 2016 and ends on September 30, 2022. *See* Dkt. No. 35, n.6

On April 29, 2024, Plaintiff filed a motion for judicial approval of the Settlement Agreement.  *See* Dkt. No. 35.  The parties propose to settle the case for a total of $150,000.00 payable in installments over seven months.  *See* Dkt. No. 35-1 at 5-6.  Of that amount, Plaintiff shall receive $98,736.27 (Dkt. No. 35 at 4), and Levin-Epstein & Associates, P.C. (Plaintiff's counsel) shall receive $51,263.73, which consists of $49,368.13 in attorneys' fees and $1,895.60 in costs.  Dkt. No. 35 at 8; *see also* Dkt. No. 35-1 at 5-6.

On April 30, 2024, this Court held a fairness hearing and directed Plaintiff to file additional documents, including a copy of his retainer agreement with counsel, a copy of the settlement agreement containing Plaintiff's wet signature, and supplemental billing records.  *See* Text Order dated April 30, 2024; *see* Dkt. No. 38 (Transcript).  Plaintiff filed these supplement documents on May 1, 2024.  *See* Dkt. No. 36.

During the April 30, 2024 fairness hearing, the Court also ordered the parties to file separate letters in which they provide legal grounds to either include or strike the confidentiality provisions found in paragraphs 11 and 12 of the proposed settlement agreement.  *See* Text Order, dated April 30, 2024.  The parties subsequently filed letters in response to this portion of the Court's orders. *See* Dkt. Nos. 36, 37.

On May 23, 2024, the Court ordered Plaintiff to provide the Court with (i) biographical information for Mr. Joshua Levin-Epstein, Mr. Jason Mizrahi, and Ms. Alexis Abrego delineating their professional experiences in support of the requested fee awards and (ii) a computation of the total hours expended by counsel in this litigation.  *See* Text Order, dated May 23, 2024.  In response to this Court's Order, Plaintiff filed a letter containing biographical information for Mr. Levin-Epstein, Mr. Mizrahi, and Ms. Abrego (including length and substance of legal experience)

3

and a computation of the total hours expended in the prosecution of Plaintiff's claims. Dkt. No. 39.

## II. Discussion

### A. Legal Standard

In *Cheeks v. Freeport Pancake House, Inc.*, the Second Circuit "held that parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020).

"A reviewing court must ensure that the proposed agreement between the plaintiff and the defendant reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2023 WL 2707024, at *2 (E.D.N.Y. Mar. 30, 2023) (quoting *Li v. HLY Chinese Cuisine Inc.*, 596 F. Supp. 3d 439, 445 (E.D.N.Y. 2022)); *see also Intal v. Erie Agustin, M.D. Primary Care, P.C.*, No. 18-CV-03196 (SJ) (JRC), 2022 WL 892084, at *2 (E.D.N.Y. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL 889041 (E.D.N.Y. Mar. 25, 2022) ("In considering whether to approve an FLSA settlement, courts consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." (quotations and citation omitted)). Courts generally consider the following non-exclusive list of factors to determine whether a settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Jun Cui v. O2 Korean BBQ*, No. 19-CV-2794 (DLI) (SJB), 2020 WL 7034369, at *4 (E.D.N.Y. Feb. 11, 2020).

> Conversely, the following factors can weigh against approving a settlement:
>
> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Li*, 596 F. Supp. 3d at 445 (citations omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600. In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.*; *see also Wolinsky*, 900 F. Supp. 2d at 336 (explaining that to enable the Court to evaluate the reasonableness of the proposed fees, counsel must submit evidence supporting their requested fees including, for example, billing records).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

### B. <u>Settlement Terms</u>

#### i. **The Confidentiality Clause**

As a threshold matter, the Court finds that the parties' Settlement Agreement contains an impermissible confidentiality clause ("the Confidentiality Clause"). Dkt. No. 35-1, ¶ 11.

By way of background, as currently drafted, the Confidentiality Clause reads:

> Except as permitted or required by law, including but not limited to the filing of the Settlement Agreement with the Court, Plaintiff shall not disclose the amount of the monies paid under this Agreement to any third party other than his spouse, legal counsel, or accountant.

*Id.* Nonetheless, the next paragraph in the Settlement Agreement reads as follows:

> It is expressly agreed and understood that the Court may, independently determine that the foregoing provision is impermissible under *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In such instance, it is expressly agreed and understood that the Court may, independently, strike the foregoing provision, and approve the remaining Settlement Agreement, without the need for the parties to re-execute the Settlement Agreement.

*Id.* at ¶ 12.

On April 30, 2024, this Court requested that the parties provide legal support for a finding that the Confidentiality Clause should not be struck from the remainder of the Settlement Agreement. *See* Text Order dated April 30, 2024.

In response to this Court's Order, Defendants filed a letter arguing that the Confidentiality Clause should not be struck because it is "is narrowly tailored to merely limit the disclosure by Plaintiff of the settlement amount and excepts: (1) disclosures permitted or required by law, (2) the filing of the agreement itself, and (3) disclosures to his spouse, legal counsel or accountants." Dkt. No. 37.

Plaintiff responded to this Court's order by stating that the Court may independently strike the Confidentiality Clause from the Settlement Agreement, as the Confidentiality Clause does "not pass *Cheeks* scrutiny." Dkt. No. 36.

Upon review of the parties' submissions, the transcript of the fairness hearing, and the Settlement Agreement itself, the Court respectfully recommends that the Confidentiality Clause be stricken from the remainder of the Settlement Agreement (Dkt. No. 35-1).

"The Second Circuit has repeatedly noted that 'the common law right of public access to judicial documents is firmly rooted in our nation's history.'" *Jones v. Smith*, 319 F. Supp. 3d 619, 624 (E.D.N.Y. 2018) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("The common law right of public access to judicial documents is said to predate the Constitution.").

"Although in many—if not most—cases, a settlement agreement would not qualify as a 'judicial document,' settlement agreements in FLSA cases are different because of the requirement for judicial approval." *Jones*, 319 F. Supp. at 624. "That is, an agreement settling an FLSA claim that is submitted for court approval is indisputably a document that is 'relevant to the performance of the judicial function and useful in the judicial process,' and thus a 'judicial document' subject to the presumption of access." *Jones*, 319 F. Supp. 3d at 624 (quoting *Wolinsky*, 900 F.Supp.2d at 33).

"A court-approved FLSA settlement cannot be confidential absent a substantial showing that the need for confidentiality outweighs the presumption of public access." *Jones*, 319 F. Supp. 3d at 624 (quoting *Yunda v. SAFI-G, Inc.*, No. 15-CV-8861, 2017 WL 1608898 (HP), at *4 n.2 (S.D.N.Y. Apr. 28, 2017) (quotations in original)). "The presumption of public access here is only bolstered by the public policies undergirding the FLSA." *Jones*, 319 F. Supp. 3d at 624. "Shielding FLSA settlement agreements from the public prevents public scrutiny that otherwise attends to judicial documents and contributes to our collective understanding and safeguarding of justice. In particular, since the FLSA provides for judicial scrutiny of settlement agreements, these cases bear a 'private-public character,' added atop the general presumption of openness attached to judicial documents, that weighs strongly against any interest that a party may have in keeping

7

the terms of its agreement confidential." *Id.* (citing *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *5 (S.D.N.Y. Apr. 27, 2015) (citations omitted)).

Defendants argue that the Confidentiality Clause should not be stricken because it is purportedly narrowly tailored to limit disclosure by Plaintiff of the settlement amount and "excepts" disclosures permitted or required by law, the filing of the agreement, and disclosures to his spouse, legal counsel, or accountants. Dkt. No. 37. Defendants add that the Confidentiality Clause "does not, for example, prohibit discussion of the case itself or address any other matter." *Id.* at 1.

But Defendants' argument misses the mark. Simply stated, confidentiality provisions in FLSA settlement agreements that "bar plaintiffs from openly discussing their experiences litigating . . . wage and hour case[s] . . . run afoul of the purposes of the FLSA and the 'public's independent interest in assuring that employees' wages are fair.'" *Gonzalez,* 2015 WL 6550560, at *3 (quoting *Nights of Cabiria*, 2015 WL 1455689, at *5) (citations omitted); *see also Mahalick v. PQ New York, Inc.*, No. 14-CV-899 (WHP), 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) (rejecting settlement agreement with similar terms); *Coffin v. MRI Enters.*, No. 11-CV-2453 (DRH), 2015 WL 3930272, at *1 (E.D.N.Y. Mar. 19, 2015) ("[I]n prohibiting the plaintiffs from disclosing the terms of the settlement, the confidentiality provision is contrary to well-established public policy and impedes one of the goals of the FLSA-to ensure that all workers are aware of their rights."). The Confidentiality Clause here contravenes the very purpose of the FLSA. *See Linares v. Cosan Constr. Corp.*, No. 22-CV-6267 (VSB), 2024 WL 1076997, at *2 (S.D.N.Y. Feb. 12, 2024) ("Here, I find that the clause impermissibly undermines the purpose of the FLSA in that it arguably prohibits a FLSA plaintiff from speaking truthfully about h[er] experiences, h[er] claims, and the resolution of her lawsuit.") (cleaned up).

Moreover, limiting disclosure to Plaintiff's "spouse, legal counsel, and accountant" is unavailing. *See Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting, citing *Cheeks*, a confidentiality stipulation allowing disclosure to only counsel, accountants, spouse, and immediate relatives); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) (rejecting confidentiality provisions that precluded plaintiff from speaking with anyone about the settlement other than his immediate family, financial advisors and attorneys or in response to compulsory legal process). Indeed, enforcement of such a provision would only seem destined to spur unnecessary litigation—increasing the costs to all parties.

Thus, this Court finds that the inclusion of the Confidentiality Clause is inconsistent with the spirit of the FLSA and recommends that it be stricken from the remainder of the Settlement Agreement.

### ii. The Remainder of the Settlement Agreement

Notwithstanding the deletion of the impermissible Confidentiality Clause, this Court finds that the remainder of the terms of the Settlement Agreement to be fair and reasonable.

The Settlement Agreement states that, following an initial payment representing one half of the settlement amount within fourteen days of judicial approval, the remainder of the settlement amount will be paid over six months in equal installments. *See* Dkt. No. 35-1, at 5-6. Such a payment plan is fair and reasonable. *See, e.g., Intal*, 2022 WL 892084, at *2 (approving, in an FLSA case, a proposal "to settle the case for a total of $50,000.00 paid in equal installments over 18 months"); *Grijalba v. Metro Rite Laundromat, Inc.*, No. 20-CV-3398 (LB), 2021 WL 8316291, at *2 (E.D.N.Y. Oct. 7, 2021) (approving an FLSA settlement whereby the defendants paid a lump sum upon court approval and "the remainder of the settlement in $1,000 monthly installments for

9

the following twenty months."); *Perechu v. Flaum Appetizing Corp.*, No. 18-CV-1085 (SJB), 2021 WL 9564384, at *3 (E.D.N.Y. Dec. 17, 2021) (approving a settlement in an FLSA case whereby payment was to be made in two equal installments: "the first being thirty (30) days after the Effective Date and the second being no later than six (6) months after the date the first installment is made or October 1, 2022, whichever date is earlier.").

Additionally, the Settlement Agreement "does not include the typical provisions that preclude approval, including (1) overbroad releases; (2) highly restrictive confidentiality provisions; (3) non-disparagement provisions that bar truthful statements; and (4) prohibitions on future employment." *Li*, 596 F. Supp. 3d at 450.

Accordingly, upon review of the Settlement Agreement as a whole, this Court finds the settlement terms fair and reasonable. As the parties' Settlement Agreement already permits this Court to strike the Confidentiality Clause without requiring the parties to re-execute a new agreement, the Court next turns to the amount of the proposed settlement.

### C. Settlement Amount

The parties propose a total settlement amount of $150,000.00. *See* Dkt. No. 35. In reaching this settlement, Plaintiff recognizes that several issues could adversely impact his recovery. First, there is a lack of documentation of Plaintiff's working hours and wage payments. *See* Dkt. No. 35, at 5. If this matter were to proceed to trial, Plaintiff would bear the risks associated with the lack of documentation and the added fact that the only available witnesses are hostile witnesses still employed by Defendants. *Id.* Defendants, on the other hand, would bear the risks associated with the absence of documentation for which they were legally responsible to maintain. *Id.*

Next, the settlement amount is substantial and fair given Plaintiff's expected range of recovery. As calculated by Plaintiff, the maximum aggregate recovery amount of alleged unpaid

10

wages is $200,702.14. Dkt. No. 35, at 4. The settlement amount here thus represents approximately 75% of Plaintiff's expected recovery—an amount deemed more than reasonable by other Courts in this Circuit. *See, e.g., Arsenal v. Star Nissan, Inc.*, No. 23-CV-06631 (HG), 2024 WL 1513531, at *2 (E.D.N.Y. Apr. 8, 2024) ("Plaintiff's ultimate recovery therefore represents approximately 15.72% of his estimated maximum recovery for the same claims. [] Although this percentage is on the lower end of what courts in the Second Circuit tend to approve, the Court finds that the risks the parties faced in litigating this case weigh in favor of approving the settlement."); *Andreyuk v. ASF Constr. & Excavation Corp.*, No. 19-cv-7476 (AEK), 2023 WL 3993933, at *3 (S.D.N.Y. June 14, 2023) (approving settlement range of 8% to 19% even though these percentages were "lower, as a percentage of [p]laintiffs' alleged damages, than the amounts typically approved by courts in the Second Circuit when evaluating potential agreements resolving FLSA and NYLL claims"); *Lawtone-Bowles v. City of New York,* No. 16-CV-4240 (AJN) (OTW), 2021 WL 1326865, at *2 (S.D.N.Y. Apr. 8, 2021) (finding a plaintiff's recovery of 75% of their total claimed amount of unpaid wages reasonable); *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range."); *Chowdhury v. Brioni Am., Inc.*, No. 16-CV-344 (HBP), 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (approving an FLSA settlement despite the fact that the "settlement represents approximately 40 percent of the plaintiffs' claimed damages).

Additionally, the settlement amount avoids the incurrence of additional expenses. As the parties note, at issue in this litigation—especially in the absence of payment records—are the total

11

number of hours worked by Plaintiff and whether Plaintiff was entitled to overtime wages as a matter of law.  Dkt. No. 35, at 5.  At this juncture, the parties have yet to complete discovery, identified a number of outstanding depositions to be conducted ("no less than seven"), and the voluminous nature of remaining productions.  *Id.*

Accordingly, this settlement amount is reasonable in light of anticipated expenses to be incurred by the parties*. See Santos*, 2021 WL 431451, at *1 (noting that a factor weighing in favor of a finding of reasonableness is "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.")

The Court also recognizes that the Settlement Agreement was the product of arm's-length negotiations between experienced counsel.  *See* Dkt. No. 35, at 6-7.  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."  *Meigel v. Flowers of the World, NYC, Inc.*, No. 11-CV-465 (KBF), 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) (quoting *Johnson v. Brennan*, No. 10-CV-4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)).  Here, there is no question that the parties' negotiations were contentious, as evidenced by two unsuccessful mediations, one settlement conference, and the letters submitted to the Court about the parties' negotiations.  *See*, *e.g.* Dkt. Nos. 21-29.  This Court therefore has no doubt that "the proposed settlement reflects a reasonable compromise over contested issues."  *Meigel*, 2012 WL 70324, at *1 (quotations and citation omitted).

Finally, there is nothing to suggest that the proposed settlement is tainted by "fraud or collusion."  *Wolinsky*, 900 F. Supp. 2d at 335; *see also* Dkt. No. 35, at 6.  And although the FLSA places "strict limits on an employee's ability to waive claims for fear that employers would

12

otherwise coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (cleaned up), these concerns are not as relevant because Plaintiff no longer works for Defendants, *see, e.g., Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (noting that plaintiffs are "no longer employees of the defendants," which "reduc[es] the danger that the release was obtained through improper job-related pressure").

Given the disputed factual issues, the stage of the proceedings where the parties have conducted substantial discovery, and risks inherent in litigation, this Court finds that Plaintiff's recovery under the settlement is fair and reasonable, and is within the possible range of recovery. The Court next turns to Plaintiff's attorneys' fees and costs.

### D. Attorneys' Fees and Costs

According to the proposed Settlement Agreement, $49,368.13 of the settlement funds will go to Plaintiff's counsel to cover attorneys' fees and $1,895.60 will cover costs. *See* Dkt. No. 35, at 8. The costs requested include filing fees and fees for effectuating service on Defendants. *See id.* "Courts often award costs that are 'incidental and necessary to plaintiff's representation.'" *Morales v. City Scrap Metal, Inc.*, No. 19-CV-6682 (CLP), 2022 WL 20539979, at *5 (E.D.N.Y. Nov. 16, 2022) (cleaned up).

Plaintiff's attorneys' fees reflect one-third of the net settlement amount, and Plaintiff agreed to compensate counsel in the amount of one-third of the net settlement amount. *See* Dkt. No. 36-3 (retainer agreement). A one-third contingency fee is a commonly accepted fee in this Circuit. *See Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG) (VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *see also Shamsundar v. FCS Grp. LLC*, No. 18-CV-2514 (KAM) (LB), 2019 WL 3716198, at *4 (E.D.N.Y. May 22, 2019) ("Courts in this district generally find 33% of the overall settlement, mirroring the one-third contingency fee arrangement

13

to be reasonable"); *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-CV-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (collecting cases).

Still, "[c]ourts must assess the reasonableness of plaintiff's attorneys' fees, regardless of whether the fee has been negotiated as part of the settlement amount." *Morales*, 2022 WL 20539979, at *5 (cleaned up). Courts consider the following six factors when assessing the reasonableness of attorneys' fees in FLSA settlements: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation[]; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

In calculating attorneys' fees, courts have used one of two methods: the "lodestar" method and the "percentage-of-recovery" method. *See Allen v. Taylor*, 795 Fed. App'x 79, 80 (2d Cir. 2020). When using the "lodestar" method, courts multiply the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 551-52 (2010); *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). "While there is a strong presumption that this amount represents a reasonable fee, it may be adjusted upward or downward based on other considerations." *Cowan v. Ernest Codelia, P.C.*, No. 98-CV-5548 (JGK), 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), *aff'd sub nom. Cowan v. Codelia*, 50 F. App'x 36 (2d Cir. 2002) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). Indeed, "courts in this Circuit have applied a multiplier to the lodestar calculation." *Morales*, 2022 WL 20539979, at *5 (collecting cases).

14

Instead of using the lodestar method, courts may also employ the "percentage of the fund" method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417-18 (2d Cir. 2010) (collecting cases). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. *See Romero*, 2016 WL 1369389, at *2 (collecting cases); *see also Vargas v. Pier 59 Studios L.P.*, No. 18 Civ. 10357 (VSB), 2021 WL 6066088, at *2 (S.D.N.Y. Nov. 4, 2021) ("courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases"); *see, e.g., Guillermo v. Starting C & M Corp.*, No. 23 Civ. 5022 (AS), 2024 WL 1859733, at *2 (S.D.N.Y. Apr. 29, 2024) (approving attorneys' fees that were "approximately 33% of the net settlement amount"). "However, a one-third percentage may be 'simply too great' in relation to the work performed." *Morales*, 2022 WL 20539979, at *5 (quoting *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515 (RA), 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017)). "In FLSA cases, regardless of the method used, "[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Id.* (quotations and citation omitted).

Here, Plaintiff retained the law firm of Levin-Epstein & Associates, P.C in connection with this action. *See* Dkt. No. 35, 36-1. Plaintiff's counsel, Mr. Levin-Epstein and Mr. Mizrahi, represented Plaintiff in this matter. *See id.* Mr. Levin-Epstein is a partner at Levin-Epstein & Associates, P.C who has been practicing law since 2006 and represents clients in various field of law, including wage and hour law. Dkt. No. 39, at 1. Mr. Mizrahi is an Associate at the same law firm, has been practicing law since 2016, and also represents clients in employment litigation, including wage-and-hour law litigation. *Id.* at 2. Together, Mr. Levin-Epstein and Mr. Mizrahi are seeking $49,468.13 in attorneys' fees, which represents 121.75 hours of work billed at a rate of $450.00 per hour for Mr. Levin-Epstein and $350.00 per hour for Mr. Mizrahi. *See* Dkt. No. 35,

15

at 7; 35-2. The contemporaneous billing records also indicate that Ms. Abrego, a paralegal, was also billed for work performed at a rate of $50.00 per hour—increasing to $90.00 or on about August 2023. *See* Dkt. No. 35-2. As reflected on the invoices submitted by Plaintiff, counsel has been involved in all phases of litigation in this matter, including mediation and settlement. *See* Dkt. No. 36-4.

This Court finds the hours billed reasonable in light of the procedural nuances of this case. The Court also finds Mr. Levin-Epstein, Mr. Mizrahi, and Ms. Abrego's hourly rates of $450.00, $350.00, and $50.00 respectively reasonable.[2] *See, e.g.*, *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *17 (E.D.N.Y. Sept. 29, 2023) (explaining how courts in this district typically award hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases); *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *9-10 (E.D.N.Y. Mar. 5, 2021) (collecting cases correlating rates to numbers of years of experience and awarding $375 an hour to a founding and managing partner of a labor and employment firm with eighteen years of experience), *report and recommendation adopted*, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021).

The other *Goldberger* factors also weigh in favor of finding the award fair and reasonable: the risks of litigation are high, "FLSA claims typically involve complex mixed questions of fact and law," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys to take on FLSA and NYLL actions that protect the wages of workers is served here. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013).

---

[2] For avoidance of doubt, this Court also finds Ms. Abrego's rate increase from $50.00 to $90.00 (as effected on or about August 2023) reasonable in light of the rates typically awarded to legal support staff in this District. *See Esquivel*, 2023 WL 6338666, at * 17.

16

Thus, as Plaintiff's counsel is requesting one-third of the settlement, a percentage typically found reasonable in this Circuit, and upon review of the parties' submissions and in consideration of the *Goldberger* factors set forth above, the Court finds the $49,368.13 attorneys' fees award amount to be fair and reasonable. Further, as Plaintiff's costs were reasonable, supported, and involved "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients," (*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)), this Court finds the $1,895.00 award of costs to be fair and reasonable.

Accordingly, this Court respectfully recommends that Plaintiff's request for $49,368.13 in attorneys' fees and $1,895.60 in costs be granted.

## IV. Conclusion

Accordingly, for the reasons set forth above, this Court respectfully recommends that the Settlement Agreement be approved as a fair and reasonable compromise of Plaintiff's claims. The Court also respectfully recommends that the Confidentiality Clause be stricken from the Settlement Agreement.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merle. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United*

17

*States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:       Brooklyn, New York
               May 28, 2024

**SO ORDERED**.

          */s/ Joseph A. Marutollo*
          JOSEPH A. MARUTOLLO
          United States Magistrate Judge